# Waiver of Oath of Allegiance for Candidates for Naturalization

The required oath of allegiance as a condition of naturalization under section 337 of the Immigration and Nationality Act, 8 U.S.C. § 1448(a), cannot be waived.

February 5, 1997

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
IMMIGRATION AND NATURALIZATION SERVICE

This letter responds to your request for the advice of this Office as to whether the Immigration and Naturalization Service ("INS") can waive the statutory requirement that all applicants for naturalization take an oath of allegiance, found at section 337(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1448(a) (1994). See Memorandum for Dawn Johnsen, Acting Assistant Attorney General, Office of Legal Counsel, from David A. Martin, General Counsel, Immigration and Naturalization Service (Jan. 8, 1997) ("INS Memo"). We gave you our views on this question by telephone on January 31, 1997, and hereby memorialize that advice.

It is our conclusion that the oath requirement of section 337 cannot be waived. Since the earliest days of our republic, Congress has exercised its power to "establish an uniform Rule of Naturalization," U.S. Const. art. I, § 8, cl. 4, to require some form of an oath of allegiance as a condition of naturalization. See Act of March 26, 1790, ch. 3, § 1, 1 Stat. 103, 103 (requiring applicants for naturalization to take oath "to support the Constitution of the United States"); see also Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, 7 Immigration Law and Procedure § 96.05[1] (1996) (noting that "U.S. naturalization laws have always required an oath of allegiance as a prerequisite to naturalization" and chronicling statutory evolution of that oath). As "a promise of future conduct," Knauer v. United States, 328 U.S. 654, 671 (1946), the oath of allegiance has been, and remains, an "indispensable legal requirement[ ]" of naturalization. United States v. Tuteur, 215 F.2d 415, 417 (7th Cir. 1954); see also United States v. Shapiro, 43 F. Supp. 927, 929 (S.D. Cal. 1942) ("The alien makes a contract with the government of the United States. In return for the benefits and high privileges bestowed upon the alien, he makes a solemn agreement expressed in the oath required of all who become citizens."); cf. Luria v. United States, 231 U.S. 9, 22 (1913) ("Citizenship is membership in a political society and implies a duty of allegiance on the part of the member and a duty of protection on the part of the society. These are reciprocal obligations, one being a compensation for the other.").

The current version of the oath of allegiance contains five elements: (1) support the Constitution; (2) renounce all allegiance to any foreign state or sovereign; (3) support and defend the Constitution and laws of the United States against all enemies; (4) bear "true faith and allegiance" to the same; and (5) bear arms,

41

perform noncombatant service, or perform work of national importance on behalf of the United States. 8 U.S.C. § 1448(a). In order to attain U.S. citizenship, an applicant must satisfy each of these elements, for the INA demands strict compliance with its statutory conditions.[1] *See* 8 U.S.C. § 1421(d) (1994) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter *and not otherwise.*") (emphasis added); *cf. INS v. Pangilinan,* 486 U.S. 875, 884 (1988) (courts' role in naturalization process requires "strict compliance with the terms of [the] authorizing statute"). Moreover, courts have long recognized that naturalization is a privilege, not a right, to be granted only in accordance with the precise conditions established by Congress. *See Rogers v. Bellei,* 401 U.S. 815, 830 (1971) (" 'No alien has the slightest right to naturalization unless all statutory requirements are complied with.' ") (quoting *United States v. Ginsberg,* 243 U.S. 472, 475 (1917)).

Your memorandum raises the possibility that Congress might have intended to waive the oath of allegiance requirement when, in 1994, it amended section 312(b) of the INA to permit waiver of the English language and civics requirements for naturalization applicants who are "unable because of physical or developmental disability or mental impairment to comply therewith." 8 U.S.C. § 1423(b)(1) (1994). According to this argument, by waiving the English language and civics requirements for disabled applicants who would otherwise be denied naturalization, Congress must also have intended to waive the oath of allegiance for those disabled applicants who could not satisfy that requirement.

We agree with the conclusion reached in your memorandum that this argument is unpersuasive. INS Memo at 3. To begin with, as you have also noted, not all disabled applicants who would benefit from a waiver of the English language and civics requirements would also need a waiver of the oath requirement in order to become U.S. citizens. The fact that Congress chose to waive one statutory requirement for a certain subset of naturalization applicants in no way compels the conclusion that Congress thereby implicitly intended to waive another statutory requirement for a larger subset of applicants. On the contrary, both the language and legislative history of section 312(b) indicate that Congress intended *only* to waive the English language and civics requirements. *See* 8 U.S.C. § 1423(b)(1) (waiver applies only to § 1423(a), language and civics requirements); 140 Cong. Rec. 29,220 (1994) (Rep. Mineta's statement that individuals obtaining waiver under section 312(b)(2) would benefit immigrants "who are eager to declare their loyalty to this, their adopted country, by taking the oath of citizenship").

Indeed, it can be argued that Congress's failure to provide an explicit waiver of the oath requirement supports the view that Congress considered the oath of allegiance a critical, indispensable element of the naturalization process. To be

---

[1] The only category of naturalization applicants that Congress exempted from the oath requirement are children who are applying for derivative citizenship pursuant to 8 U.S C § 1433 (1994) and who, in the opinion of the Attorney General, are "unable to understand [the oath's] meaning " 8 U.S C. § 1448(a).

sure, Congress recognized that there might be naturalization applicants who, because of serious illness, permanent or developmental disability, advanced age, or other exigent circumstances, would be unable to take the oath of allegiance in a public ceremony as required by section 337(a). In 1990, Congress accommodated the needs of such applicants through the establishment of an alternative, expedited procedure for administration of the oath. *See* 8 U.S.C. § 1448(c). Notably, however, Congress chose not to excuse them from the oath requirement altogether, thereby reaffirming the centrality of the oath to the naturalization process.

In concluding that the oath requirement of section 337 cannot be waived, we do not disagree with the proposition advanced in your memorandum that section 504 of the Rehabilitation Act, 29 U.S.C. § 794 (1994), might require some sort of accommodation for persons who, because of their disabilities, cannot take the oath of allegiance. Whether there exists any accommodation to the oath requirement that would not result in a "fundamental alteration" of the naturalization program, *see Southeastern Community College v. Davis*, 442 U.S. 397, 410 (1979), and what the parameters of such an accommodation might be, are difficult and complex questions. Should you determine that you would like us to address these questions, we will solicit the views of the Civil Rights Division and the State Department.

> DAWN E. JOHNSEN
> *Acting Assistant Attorney General*
> *Office of Legal Counsel*