

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-21-2007

# Fowlin v. Dir BCIS

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1612

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Fowlin v. Dir BCIS" (2007). *2007 Decisions.* Paper 1445.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1445

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-1612

RICHARD FOWLIN,
Appellant,

v.

DONALD J. MONICA, DISTRICT DIRECTOR,
U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
Appellee.

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(Civil Action No. 05-3767)
District Judge: Honorable Juan R. Sanchez

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
February 13, 2007

Before: SMITH and FISHER, *Circuit Judges*,
and DIAMOND, *District Judge**

(Filed: March 21, 2007)

OPINION

DIAMOND, District Judge.

---

*The Honorable Gustave Diamond, Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1

Richard Fowlin appeals an order of the United States District Court for the Eastern District of Pennsylvania granting a motion for summary judgment filed by the defendant, Donald J. Monica, District Director of the United States Citizenship and Immigration Services ("USCIS").  For the reasons that follow, we will affirm.

I.

Appellant, Richard Fowlin, a citizen of Jamaica, entered the United States in October 1983 and subsequently attained lawful permanent resident status.  On January 17, 1990, a Pennsylvania state jury found him guilty of possession with intent to deliver cocaine and delivering cocaine, in violation of 35 P.S. § 780-113(a)(30).  He was sentenced for that crime on September 13, 1991, to pay a fine and to serve a term of imprisonment.

Based on that conviction, the Immigration and Naturalization Service ("INS"), the predecessor of the USCIS, initiated deportation proceedings against Fowlin.  However, in June 1997, he was found to be eligible for, and was granted, discretionary relief from deportation under section 212(c) of the Immigration and Nationality Act of 1990 ("INA"), 8 U.S.C. § 1182(c).  As a result, the deportation proceedings were terminated and Fowlin was permitted to remain in the United States as a lawful permanent resident.

On September 20, 2001, Fowlin applied for United States citizenship.  His application was denied by the USCIS on the ground that his drug trafficking conviction in September 1991 permanently precluded him from establishing the history of good moral character that is required for naturalization by the INA.  When that ruling was affirmed

2

administratively on appeal, Fowlin brought the instant action against the District Director of the USCIS in the United States District Court for the Eastern District of Pennsylvania for de novo review pursuant to 8 U.S.C. § 1421(c).

The District Court granted the defendant's motion for summary judgment, agreeing with the defendant that Fowlin's conviction of a drug trafficking offense disqualified him from becoming a naturalized United States citizen. This appeal followed.

The District Court had jurisdiction under 8 U.S.C. § 1421(c) and 28 U.S.C. § 1331. This Court has jurisdiction of the appeal under 28 U.S.C. § 1291. The scope of our review of a grant of summary judgment is plenary. Fed. Home Loan Mortg. Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003).

## II.

Section 316(a)(3) of the INA provides in its pertinent part that "[n]o person . . . shall be naturalized unless such applicant . . . (3) during all the periods referred to in this subsection [the five years preceding the filing of the application for naturalization] has been and still is a person of good moral character . . . ." 8 U.S.C. § 1427(a)(3) (emphasis added).

With respect to good moral character, the INA provides that:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was–
> (8) one who at any time has been convicted of an aggravated felony (as defined in subsection (a)(43) of this section).

3

8 U.S.C. § 1101(f)(8) (emphasis added).

An "aggravated felony" is defined in the INA to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."  8 U.S.C. § 1101(a)(43)(B).

Finally, the term "conviction" is defined by the INA, as amended, as:

> with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where -
> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A).

The District Court in granting summary judgment reasoned that Fowlin was ineligible for citizenship because he was "convicted" on September 13, 1991, the day he was sentenced for the drug trafficking crime of which the jury had found him guilty on January 17, 1990; since the conviction was for drug trafficking, it was an aggravated felony as defined in 8 U.S.C. § 1101(a)(43); and because the conviction came after the November 29, 1990, effective date of the INA amendments, Fowlin was precluded by 8 U.S.C. § 1101(f)(8) from being "regarded as, or found to be, a person of good moral character" from the date of that conviction, and therefore he did not, and could not, satisfy the requirement that during the five years preceding his application for naturalization he was and had been a person of good moral character as required by 8 U.S.C. § 1427(a)(3).

Fowlin argues on appeal that the District Court erred in finding as a matter of law that he

4

was convicted for drug trafficking on September 13, 1991, when he was sentenced for that crime, rather than earlier on January 17, 1990, when he was found guilty of it by a jury. Those dates are crucial, of course, because, as noted above, Congress provided in the INA at 8 U.S.C. § 1101(f)(8) that one is precluded from establishing the good-moral-character requirement for naturalized citizenship if that person was convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43), after the November 29, 1990 effective date of the INA amendments.

Fowlin's argument as to the date of his conviction is foreclosed by the ruling of this Court on this precise issue in Perez v. Elwood, 294 F.3d 552 (3d Cir. 2002). There the question was, as it is here, whether the appellant had been convicted of a particular crime on the day that the jury found him guilty or on the later date when he was sentenced.

The Perez Court thoroughly reviewed the applicable authorities and analyzed all relevant sections of the INA and the amendments thereto found in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and the Antiterrorism and Effective Death Penalty Act of 1996. It then held first that the IIRIRA definitional amendments to the INA, particularly as to the meaning of "conviction" and "aggravated felony," clearly were intended by Congress to be retroactive, and that this was constitutionally permissible. The Perez Court based its analysis on this issue principally on the rulings of the Supreme Court in Landgraf v. USI Film Prods., 511 U.S. 244 (1994) and INS v. St. Cyr, 533 U.S. 289 (2001). See Perez, 294 F.3d at 558, 561.

The Court then concluded its analysis of the meaning of "conviction" for INA purposes with this ruling:

5

> We agree that it makes sense to define "formal judgment of guilt" by reference to Rule 32(d)(1)'s definition of "judgment of conviction." Therefore, for the purposes of the INA, a conviction occurs when either (1) a "formal judgment of guilt of the alien [is] entered by a court," 8 U.S.C. § 1101(a)(48)(A), (and such a judgment must "set forth the plea, verdict or finding, the adjudication, <u>and the sentence</u>," Fed. R.Crim. P. 32(d)(1)); or (2) "a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt" and "<u>the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.</u>" 8 U.S.C. § 1101(a)(48)(A)(i) & (ii).

<u>Id</u>. at 562 (emphasis added). Based on the foregoing, the Court held that "Perez was convicted, at the earliest, when the [District] Court sentenced [him] in June 1997." <u>Id</u>.

Fowlin contends that this panel of the Court need not follow <u>Perez</u> because it can be distinguished. He argues that the underlying conviction in <u>Perez</u> was for a federal offense and the definition of the term "conviction" formulated by the <u>Perez</u> court should not be applied to him because he was convicted under Pennsylvania state law, which therefore should be consulted for a definition of the term.

That argument also is without merit. In <u>Pinho v. Gonzales</u>, 432 F.3d 193, 205 (3d Cir. 2005), this Court noted that in <u>In re Ozkok</u>, 19 I. & N. Dec. 546 (B.I.A. 1988), the Board of Immigration Appeals adopted a definition of "conviction" for the express purpose of correcting problems which had arisen because there was no definition of conviction in our immigration law and the INS had been forced to rely on diverse state law concepts of convictions, which created these problems. The BIA adopted a definition of "conviction" in order to fashion a "uniform national immigration policy with respect to prior convictions" and "[w]hen Congress included a definition of 'conviction' in the 1996 amendments to the INA, it used, almost

6

verbatim, the first two parts of the <u>Ozkok</u> test." <u>Pinho</u>, 432 F.3d at 205. It would be anomalous for us now to again look to the several states for definitions of the term "conviction" for use in naturalization matters.

Fowlin next maintains that if <u>Perez</u> cannot be distinguished, then it should be overruled or simply ignored by this panel of the Court. This, he contends, is because <u>Perez</u> used the term "judgment of conviction" found in the Federal Rules of Criminal Procedure when defining the term "formal judgment of guilt" found in the INA when the "plain meaning" of the latter term; to wit, the verdict of the jury should have been adopted.

As a precedential opinion of this Court, <u>Perez</u> is binding on all subsequent panels of the Court, and only a court <u>en banc</u> can overrule it. <u>See</u> Third Circuit IOP 9.1. Fowlin's request that we overrule <u>Perez</u> will be denied. Moreover, in the judgment of this panel of the Court <u>Perez</u> is a well-reasoned opinion which correctly states the law. Accordingly, there is no reason to seek <u>en banc</u> consideration of it.

Fowlin next argues that his due process rights were violated in several ways by the application of § 1101(f)(8) to him. He contends that there is an unsupportable irrebuttable presumption inherent in 8 U.S.C. § 1101(f)(8) that one who once was convicted of an aggravated felony can never be found to be a person of good moral character. He maintains that the conclusion does not logically follow from the premise and in any event it violates his due process right to an individualized determination of his moral fitness for naturalization.

While there may be some merit in the logic of that argument, it misses the point. The question is not simply whether Fowlin was a person of good moral character when he filed his

application for naturalization ten years after his conviction of an aggravated felony, though that of course is an important and relevant inquiry. The INA requires an applicant for citizenship to have a <u>history</u> of good moral character which by statutory proclamation he cannot have if "<u>at any</u> [relevant] time" he has been convicted of an aggravated felony. <u>See</u> 8 U.S.C. §§ 1427(a)(3) and 1101(f)(8). In Fowlin's case, that relevant time was any time after November 29, 1990. His conviction of an aggravated felony after that date <u>in and of itself</u> disqualified him. There was no need to "presume" from that conviction that Fowlin was not of good moral character at any later date. His due process rights were observed fully when the individualized determination was made that he had been convicted of an aggravated felony after November 29, 1990.

Nor does § 1101(f)(8) violate any other fundamental due process rights Fowlin possesses. Naturalization is a privilege, certainly not a fundamental right of an alien. <u>See</u> <u>Schneiderman v. United States</u>, 320 U.S. 118, 131 (1943). Since no fundamental right is involved, the "strict scrutiny" test, which Fowlin contends applies, does not, and the INA as amended passes constitutional muster so long as the government identifies a legitimate state interest rationally served by it. <u>Nicholas v. Pennsylvania State Univ.</u>, 227 F.3d 133, 139 (3d Cir. 2000).

The District Court found that the government had identified the interest of "ensuring that only qualified persons are granted citizenship," which the Supreme Court recognized as a "strong and legitimate" one in <u>Berenyi v. District Dir., Immigration and Naturalization Serv.</u>, 385 U.S. 630, 637 (1967). The District Court concluded, and we agree, that "[i]t [was] rational

8

for Congress to view aggravated felon aliens as poor candidates for United States citizenship, and mandating a preclusive bar to establishing good moral character attach to such persons serves as a reasonable precaution to deter those unqualified for citizenship from seeking naturalization." D.Ct. Mem. and Order at 9 (Dec. 22, 2005). It is beyond dispute that Congress' broad authority to prescribe requirements for naturalization is subject to very limited judicial review. See Fiallo v. Bell, 430 U.S. 787, 792 (1977) (stating that "it is important to underscore the limited scope of judicial inquiry into immigration legislation" and citing numerous Supreme Court rulings which have "repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens") (citations omitted).

Finally, Fowlin argues that the waiver of deportation he received following his drug trafficking conviction constituted evidence of his good moral character which should have been considered by the District Court. The fact that Fowlin received the waiver of deportation following his drug trafficking conviction in no way attenuates the nature or seriousness of that crime. It does not pardon or expunge the conviction. See e.g., Molina-Amezcua v. INS, 6 F.3d 646, 647 (9th Cir. 1993).

### III.

In summation, in 8 U.S.C. §§ 1101(f)(8), 1101(a)(43) and 1427(a)(3), Congress simply exercised its unquestioned authority under Article I, § 8 of the U.S. Constitution "[t]o establish an uniform Rule of Naturalization . . ." by proclaiming that an alien who has been "convicted" of an "aggravated felony" (as Congress defined those terms) after November 29, 1990, shall not

be eligible to be naturalized as a citizen of the United States. That clearly was Congress' prerogative. See Fiallo, 430 U.S. at 792; Schneiderman, 320 U.S. at 131; United States v. Ginsberg, 243 U.S. 472, 475 (1917) (stating that "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with . . ."). Fowlin was, indeed, entitled to due process in the procedure employed to determine whether he qualified for naturalization under those provisions of the law, and, as we found above, he received it.

For the reasons set forth above, we will affirm the District Court's grant of summary judgment in favor of Donald J. Monica, District Director, USCIS.