UNITED STATES of America, Plaintiff,

v.

Leokadia MARASILIS, Defendant.

Misc. No. 127.

United States District Court
W. D. Michigan, S. D.

June 21, 1956.

Wendell A. Miles, U. S. Atty., and Roman J. Snow, Asst. U. S. Atty., Grand Rapids, Mich., for government.

Charles W. Gore, Benton Harbor, Mich., for defendant.

STARR, Chief Judge.

This matter came on to be heard upon the government's motion for a summary judgment based on the ground that there is no genuine issue as to any material fact, and that the government is entitled to a judgment for the relief prayed for as a matter of law. It appears that the defendant and her counsel were given proper notice of the hearing on the government's motion, and the United States attorney stated on the record that defendant's counsel had informed him that neither he nor the defendant would be present.

On March 24, 1953, the government filed a complaint and on May 4, 1954, an amended complaint, in pursuance of § 340(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1451(a), whereby it petitioned the court to revoke and set aside the order admitting the defendant Leokadia Marasilis to citizenship, and to cancel and declare null and void the certificate of naturalization No. 5685183 issued to her on June 4, 1943. The government alleged that the defend-

ant had procured her certificate of naturalization through concealment of material facts and by fraud and wilful misrepresentations. The defendant answered, denying the material allegations of the complaint and amended complaint relative to her alleged concealment of material facts and alleged fraud and wilful misrepresentations, and denying the government's right to the relief sought.

On August 19, 1955, pursuant to Rule 36 of the Federal Rules of Civil Procedure, 28 U.S.C.A., the government filed a request for admission of facts and genuineness of documents, and the defendant filed her answers and admissions under oath. In her answers to the request for admissions she admits as follows: (1) That she was a member of the Communist Party of America during the period from 1933 to 1935 and from 1940 until 1950; (2) that she received membership cards indicating her membership in the Communist party; (3) that she was a member of the sixth ward club of the Communist party located on Champlain street near Sixty-second street in the city of Chicago, Illinois, from 1933 to 1935; and (4) that she did for a period of time between 1933 and 1949 believe the United States government should be overthrown.

On June 1, 1956, in pursuance of Rule 56 of the Federal Rules of Civil Procedure, the government filed a motion for a summary judgment. This motion was based on the allegations of the government's complaint and amended complaint and the defendant's answers thereto, and upon her answers and amended answers to the government's request for admission of facts and genuineness of documents. In support of its motion the government contends that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law.

It appears that on April 20, 1943, the defendant executed an application for a certificate of arrival and preliminary form for petition for naturalization in which she was asked the following questions and to which she gave the following answers:

"(22) Do you understand the principles of government of the United States? (Answer) Yes.

"(23) Do you fully believe in the form of government of the United States? (Answer) Yes. * * *

"(28) Are you a believer in anarchy or the unlawful damage, injury or destruction of property, or sabotage? (Answer) No. Do you belong to or are you associated with any organization which teaches or advocates anarchy or the overthrow of existing government in this country? (Answer) No."

On the same date defendant also executed a petition for naturalization, in which she made the following statements under oath:

"(14) It is my intention in good faith to become a citizen of the United States and to renounce absolutely and forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty of whom or which at this time I am a subject or citizen, and it is my intention to reside permanently in the United States. (15) I am not, and have not been for the period of at least 10 years immediately preceding the date of this petition, an anarchist; nor a believer in the unlawful damage, injury, or destruction of property, or sabotage; nor a disbeliever in or opposed to organized government, nor a member of or affiliated with any organization or body of persons teaching disbelief in or opposition to organized government. * * * (17) I am, and have been during all of the periods required by law, attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the United States."

As hereinbefore stated, defendant has since admitted under oath in her answers to the government's request for admis-

sion of facts and genuineness of documents, that she was a member of the Communist Party of America from 1933 to 1935 and from 1940 until 1950, well knowing that the Communist Party of America is an organization which at all times since 1933 advised, advocated or taught the overthrow by force or violence of the government of the United States. Defendant has further admitted under oath that she did for a period of time from 1933 to 1949 believe that the United States government should be overthrown.

■ The court recognizes and is deeply conscious of the value and importance of citizenship in the United States of America, and that the cancellation of citizenship is a serious matter. The court recognizes that citizenship obtained through naturalization carries with it the privilege of full participation in the affairs of our government and society, including the right to speak freely and to criticize and promote changes in our laws. The court also recognizes that ill-tempered expressions, extreme views, and even the promotion of ideas which run counter to our American ideals, are not to be given disloyal connotations in the absence of convincing evidence of intended disloyalty. Great tolerance and caution are necessary in order that a person, once naturalized, should not be unjustly deprived of that cherished status. Any other course of action would be contrary to our American traditions of freedom and liberty and would make denaturalization proceedings the ready instrument for personal and political persecution. See Knauer v. United States, 328 U.S. 654, 658, 66 S.Ct. 1304, 90 L.Ed. 1500. Once citizenship has been granted, the courts must jealously guard its revocation, and evidence upon which revocation can be based must be clear, unequivocal, and convincing. Baumgartner v. United States, 322 U.S. 665, 670, 64 S.Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 320 U.S. 118, 125, 63 S.Ct. 1333, 87 L.Ed. 1796; Sweet v. United States, 6 Cir., 211 F.2d 118, 120; United States v. Vander Jagt, D.C., 135

F.Supp. 676, 679; United States v. Title, D.C., 132 F.Supp. 185, 187.

Section 305 of the Nationality Act of 1940, formerly 8 U.S.C.A. § 705, under which act the defendant was naturalized, provided in part: "No person shall hereafter be naturalized as a citizen of the United States— * * * (b) * * who is a member of or affiliated with any organization, association, society, or group that believes in, advises, advocates, or teaches—(1) the overthrow by force or violence of the Government of the United States * * *. The provisions of this section shall be applicable to any applicant for naturalization who at any time within a period of ten years immediately preceding the filing of the petition for naturalization is, or has been, found to be within any of the clauses enumerated in this section, notwithstanding that at the time petition is filed he may not be included in such classes." These provisions of the Nationality Act of 1940 which I have just quoted are substantially the same as are provided in § 313 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1424.

Section 307 of the Nationality Act of 1940, formerly 8 U.S.C.A. § 707, provided in part: "(a) No person, except as hereinafter provided in this chapter, shall be naturalized unless such petitioner, (1) immediately preceding the date of filing petition for naturalization has resided continuously within the United States for at least five years * * *, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States." The above provisions of the Nationality Act of 1940 are substantially the same as are provided in § 317(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1427(a).

■ The foregoing Federal statutes clearly set forth the conditions and requirements for the obtaining of citizenship by naturalization, and the law is well established that a certificate of nat-

uralization obtained by the concealment of material facts and by fraud and misrepresentations is subject to immediate cancellation upon discovery thereof. In United States v. Ginsberg, 243 U.S. 472, 475, 37 S.Ct. 422, 425, 61 L.Ed. 853, the Supreme Court stated:

"No alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the Government may challenge it as provided in § 15 and demand its cancellation unless issued in accordance with such requirements."

In Johannessen v. United States, 225 U.S. 227, 241, 32 S.Ct. 613, 617, 56 L.Ed. 1066, the court said:

"An alien has no moral nor constitutional right to retain the privileges of citizenship if, by false evidence or the like, an imposition has been practiced upon the court. without which the certificate of citizenship could not and would not have been issued."

In Orth v. United States, 4 Cir., 142 F. 2d 969, 970, the court quoted with approval the statement in United States v. Kramer, 5 Cir., 262 F. 395, 397, as follows:

" 'American citizenship is a priceless possession, and one who seeks it by naturalization must do so in entire good faith, without any mental reservation whatever, and with the complete intention of yielding his absolute loyalty and allegiance to the country of his adoption. If he does not, he is guilty of fraud in obtaining his certificate of citizenship.' "

In United States v. Charnowola, D.C., 109 F.Supp. 810, 811, affirmed, Sweet v. United States, 6 Cir., 211 F.2d 118, certiorari denied 348 U.S. 817, 75 S.Ct. 28, 99 L.Ed. 644, the court said:

"There can be no fraud in the securing of that citizenship, whether that fraud be failure to disclose what it is obvious must be material or be an outspoken misrepresentation."

In the present case the defendant's own admissions under oath are clear, unequivocal, and convincing that her certificate of naturalization was procured by the concealment of material facts and by her fraud and wilful misrepresentations. When she stated in her application for a certificate of arrival and preliminary form for petition for naturalization that she did not belong to and was not associated with any organization which teaches or advocates anarchy or the overthrow of existing government in this country, she was concealing her membership in the Communist party, which she knew advised, advocated, and taught the overthrow by force or violence of the government of the United States. Such concealment of membership in the Communist party is material and has been judicially held to be grounds for revocation of citizenship. See United States v. Nowak, D.C., 133 F.Supp. 191; United States v. Charnowola, D.C., supra, 109 F.Supp. 810; United States v. Sweet, D.C., 106 F.Supp. 634. When defendant Leokadia Marasilis stated in her petition for naturalization that she was and had been during the periods required by law, attached to the principles of the Constitution of the United States, she wilfully misrepresented her attitude toward our form of government, having since admitted that from 1933 to 1949 she believed that the United States government should be overthrown.

### Findings of Fact

From consideration of the pleadings and the defendant's admissions the court finds that the defendant Leokadia Marasilis obtained the order admitting her to citizenship and obtained the certificate of naturalization issued to her, by her concealment of material facts and by fraud and wilful misrepresentations.

### Conclusions of Law

The court concludes: (1) That there is no genuine issue as to any material fact in this action; (2) that the defendant procured her certificate of naturaliza-

tion by the concealment of material facts and by fraud and wilful misrepresentations; and (3) that the government is entitled to a summary judgment as a matter of law revoking the order admitting the defendant to citizenship and canceling the certificate of naturalization issued to her June 4, 1943.

An order will be forthwith entered in accordance with this opinion.